Good morning, Your Honours. May I please the Court to adopt reserve for Petitioner Malcolm Sera Terefe. With the Court's consent, I'd like to reserve two minutes for rebuttal, please. Petitioner is an asylum seeker from Ethiopia who was denied asylum because of not being credible. We strongly submit that the adverse credibility finding in this case is not supported by substantial evidence in the record and thus must be overturned. We ask this Court to reverse the adverse credibility determination and grant Terefe's petition for review. In the alternative, we ask the Court to remand the case for a just consideration of Petitioner's claims. First, the IJ found Petitioner not credible because she did not mention that she was raped while in prison in her initial asylum application and in the asylum interview. Now, I noticed that neither you nor the government cited this Kibede case decided by us in May of 2004. I did. You did mention it? I mentioned it in the 28J letters. Oh, I'm sorry. Sometimes the 28J letters don't reach us. Okay. But you are aware of that. That means that the government is also aware of that case. I am aware of that. Okay, good. Thank you. This case is actually very similar to Kibede v. Ashcroft. In Kibede, just like here, Kibede explained that she was not able to talk about the rape because she was so ashamed and she also had the witness to corroborate that. Similarly, here, Petitioner was ashamed to talk about the rape. See AR at page 118. And even though the asylum officer was a woman, the interpreter was a man, so she could not discuss the rape in the interview. In fact, Petitioner was so traumatized by the rape that she didn't even mention it to her own mother and her own sister. And Petitioner also had the witness who testified that it was not acceptable in Ethiopian culture to discuss rape or even sex. That's at AR at pages 130 and 131. And Ms. Purcell, let's put the rape question to one side for a second. The record shows that in 1993, your client filed an application for asylum in which she said she suffered physical abuse. That's at 291. Then she denied that she had suffered any physical abuse, including the slapping by the police officers and the beating on her shoulders with a baton by the police officers, and that she only suffered psychological abuse in her asylum interview at page 235. That no physical mistreatment took place in jail at page 236. She denied she was tortured at page 119, and then she claimed that she was tortured. And she argued that the psychological torture was more important than the physical torture. This all before she claimed the rapes and the physical abuse by the policemen. Why is that not a flat contradiction or, as the court said, a complete turnaround? You're referring to citations from the Notice of Intent to Deny, which was submitted in the record, which is a pure assessment of the asylum officer as to petitioner's testimony. There is no evidence in the record regarding the officer's notes to corroborate that. No, no, no. I'm not going to that. I'm using that also. But her own rebuttal affidavit to the asylum officer's letter makes an argument, as I saw it, that was, well, so I wasn't physically abused. I was psychologically abused. And that's longer lasting and more difficult than and more harmful than physical abuse. And you can find that at the excerpts of record 0298. Yes, Your Honor. As a result, I then feel that my not being harmed or imprisoned bears no relevance and is of no significance to my genuine fear of persecution. In the next paragraph, to put the record straight in this issue, the fact is that all the events around my interrogation and torture are more central to the ultimate and severe psychological being. To emphasize the psychological impact is because it lives with me, but physically it heals leaving sad and fearsome memories, not the physical pain. So she's saying, all right, I didn't. I wasn't physically abused. I was psychologically abused. But that's worse. And then later she talks about the police beating and raping her. Why isn't that an inconsistency? Your Honor, petitioner's initial asylum application, including the rebuttal to the notice of intent to deny, was not prepared by an attorney. And this court has recognized that immigration forms are, quote, frequently filled out by poor illiterate people who do not speak English and are unable to retain counsel. Under these circumstances, the immigration judges cannot expect the answers provided in the applications to be as comprehensive or as fair as they would be if set forth in the legal brief. Does that apply also to her supplemental affidavit? I thought the supplemental affidavit was prepared by her. Supplemental affidavit was prepared by an attorney, and it specifically mentions the rape with all the details. No, no, no, no, no. The rebuttal affidavit doesn't mention the rape. I'm talking about the June 8, 1993 letter to John W. Cummings, which is entitled the rebuttal affidavit. At page 84 in the administrative record, petitioner explains that the rebuttal was written by a friend of hers, and she was said that there could be some errors in it, quote. And again, I'd like to emphasize that it was not prepared by an attorney, and at the time, petitioner was still suffering from the post-traumatic stress disorder. There is a letter from the psychologist at page 180 of the record corroborating that. Petitioner at page 104 of the record explained that it was only after some counseling that she was able to talk about the rape and about the physical abuse. So your explanation is the application should not be taken too strictly because it was not prepared by an attorney, and she was still suffering at the time of the June 8, 1993 rebuttal letter from post-traumatic stress disorder, which was diagnosed when? I think it was dated June 7, 2001. All right. The bottom line is petitioner did provide a reasonable explanation for her failure to mention the rape originally, which was completely dismissed and erroneously by the immigration judge and the BIA, especially in light of this court's ruling in Kibale. The second basis for the IJS adverse credibility finding was that petitioner did not mention about her brother's incarceration in Ethiopia in January of 1993, which she became aware of in May of 1993. Again, this is not a valid basis for the adverse credibility finding because this court has held, quote, an asylum applicant's testimony is not per se lacking in credibility simply because it includes details not set forth in her asylum application, see Aguilera-Cotto or Bondari. This case is similar, for example, in Aguilera-Cotto, where the IJ questioned Aguilera's testimony, Aguilera's credibility, because the testimony included information not in the application regarding two incidents that happened to the relatives. What do we do with the finding by the IJ at page 57, demeanor testimony that she did not appear candid at 139? Your Honor, I believe the demeanor finding in this case is very conclusionary. It simply says at page 57, quote, with this benefit of observation has been determined that the respondent has simply not provided a credible claim. This is a boilerplate finding. There is no specific urgent reason for the demeanor. Is this court held in Paris? Is it required that she give us specific reasons for the demeanor findings? Yes, Your Honor. This court in Paris, Paramasami v. Ashcroft, specifically held that when it comes, specifically held that it will not tolerate boilerplate findings, especially when it comes to demeanor, there should be an individualized analysis. There is no such analysis here. The IJ does not refer to the tone, to the behavior. There is nothing in the record to indicate that she was evasive, jittery, or nervous. So this is not a valid finding either. There is some indication in the record that she gave less than candid. That was the word of the IJ responses. And it might well have to do with her being a member of the Ethiopian People's Revolutionary Party since age 14 and not giving much coloration or content to their political creed other than they're in favor of democracy, equality, and justice. When we have a country report from the State Department saying that there are Marxist organizations. Yes, Your Honor. Do you think that had anything to do with it, with the demeanor finding? Again. It's hard to tell because she doesn't make any recitation. Your point is taken on that. Okay. Why don't we hear it? You've run a little over time. We'll hear from the government, but we will allow you some time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Alison Drucker. I'm representing the United States. Petitioner's asylum claim has already been denied three times by administrative officer, the immigration judge, and the Board of Immigration Appeals. That's always true when we see them. This court, as you're probably also aware, can reverse the board only if the evidence compels the finding that the petitioner's account is credible. Judge Bee got, I think, right to the heart of the matter here by asking the questions about the sequence of evidence the petitioner brought forward discussing the question of physical abuse and rape. Now, I think it's important to note that this is not a case where it's just a question of mere details being left out and then showing up at a later point. And it's also not a case where an asylum applicant has simply failed to report a rape before an administrative officer and then later alleged rape. I think this concept of switching the story back and forth is really essential here and distinguishes this case from some others that the Court has dealt with in the past. It's really difficult to imagine an inconsistency that would be more material than whether an asylum applicant is saying that they've been physically abused or not. Now, why do you say switching back and forth? It seems to me the story got stronger. But where's the back and forth coming from? Back and forth is because initially the petitioner had five chances to present her account. Okay. The first one was the initial asylum application. And there on AR-291, she says she was physically abused. Yes. I'm just reading, and this is just to corroborate what you're saying. Treated with threat and psychological and physical abuse. Right. Right. There we go. Okay. Okay. Then the second, she's interviewed by an administrative officer. This is described in the notice of intent to deny. And looking at page AR-235, she says during this interview that she was not physically harmed. Now, what do we do with the fact that this is the only evidence we have as to what she said at that interview? This is the letter of denial. We don't have the notes from that interview. We don't have the testimony from the interviewing officer. All we have is the summary and the letter of denial as to what she said. What do we do with that evidentiary problem? Well, I think it's still pretty clear if that's the notes. I mean, that's a pretty blanket statement. Well, if true, that's right, but I can't judge whether it's true by looking at underlying notes or hearing testimony from the interviewing officer. I mean, I have to take on faith that the person who read this and then summarized got it right. Sounds like hearsay to me. Well, in addition, Your Honor, it's shored up by the third opportunity, which Judge B. had mentioned also, when she rebuts, she does, I guess it's a three-page rebuttal of the notice of intent to deny. That's pages 297 to 99 in the record. And in that document, she has, I think it's on page 298, there's a paragraph where she talks about that psychological harm may be more long-lasting or more injurious than physical harm. She does not at any point challenge and say, as she so easily could, hey, I told you about all this physical harm I experienced, and here in your intent to deny me, you say I never said there was any physical harm. But she never says anything like that. She accepts their characterization that she did not suffer physical harm. I think this is extremely. Well, yes and no. This is odd and to some degree inconsistent language. And Judge Bea has already read it accurately. She says at the top of page 298, As a result, I feel that my not being harmed or imprisoned bears no relevance or is of no significance of my genuine fear of persecution. Then in the next paragraph, she says, To put the record straight in this issue, the fact is that all the events around my interrogation and torture, this is a torture, maybe she only means psychological torture, maybe she means physical torture. She's already told us previously, and this may be an evidence of back and forth or it may be a way of construing the word torture, as Judge Friese talked about physical are more central to ultimate and severe psychological being. Now, one of the characteristics of rape, of course, is that often there is no physical harm. Sometimes there is, sometimes there isn't. But the harm is psychological. Of a lasting nature, I think certainly at the time. Well, it depends. And we don't know the circumstances even now. But I think it's consistent with a rape that she could describe it as not resulting in physical, but rather resulting in psychological harm. I think that, I guess, in my experience and to my mind, if a woman had been subjected to the kind of injury that she's describing here, she would not be saying, I was not physically harmed. And if somebody was saying that, hey, you told me you weren't physically harmed, and she had three pages that she was using to answer this, I mean, she would just be jumping up and down saying, what about all this that happened to me? This is physical harm. And instead, she's just letting this all go by. I don't find this plausible. Ms. Drucker, I think you should also take a look at Excerpts of Record 118 question. Now, did you tell the asylum officer that you were never physically abused? Answer, they asked me regarding if I was beaten or if I was tortured. I said that did not happen. But at the time that I was physically harmed was during the struggle, and during the time that I was sexually raped. And that's why I did not discuss that. So as to the torture question, she says at one point she was, and admits at another time that she said she wasn't. Well, as we construe this, there is more than just detail inconsistencies, but a major flip-flop, if you will, of the story as to whether or not she was harmed in some way, other than by threats in that kind of psychological way. I'm trying to remember where it is exactly, but I think it's either in the initial asylum or in the notice of intent to deny. There's a description of the psychological harm as being threats of this sort of thing. Even taking the evidence in the way most favorable to her, it's very clear that the story got much, much better. There's simply no way around that. Right. Okay. Well, anyway, we feel that the flip-flop here does not produce the ring of truth, and that's why the immigration judge, and that was the primary reason really, that the immigration judge rejected the explanation that she gave about cultural circumstances and that she could only open up about this after she had some therapy and so forth. Yes. Now, as I read the transcript and then as I read I.J.'s explanation of his decision, it centers on and really is based upon his disbelief of her cultural explanation. And we've pretty much rejected that in the Abedi case. Well, I don't think it's the cultural explanation. I mean, I think he feels, you know, this sense of flip-flop that it's not just that she went in one direction, but there's, you know, there's this change back and forth. First I was physically harmed, then I wasn't physically harmed, then I was really badly physically harmed. I think that's what's disturbing him. And I'd like to point out that in that kind of context, this Court and other courts have rejected allegations of rape and entered adverse credibility findings. Oh, sure. I pointed out some examples in my 20HJ letter. There's the Powell case in 2000. There's the Cower case also in this Court. And that case was in 2004 after the Kabidi case that you were asking about. I think probably all of us have sat on such cases. These allegations or this testimony shows up a lot. Right. And I'm sure it's very troubling and difficult to deal with. Also, there's a First Circuit case that came out quite recently, Ali v. Gonzales, that I mentioned in my 20HJ letter. I see that my time is running out. I guess I should just say, I mean, the government's concern in this type of case is really that, besides doing a good job of protecting deserving asylum applicants, that the Court, of course, also needs to concern itself with doing a good job of protecting the integrity of the asylum process. Okay. Thank you very much. With regards to Petitioner's credibility based on the rape incident, we'd like to note to the Court that despite the fact that Petitioner did admit to the rape initially, she describes in detail in her application submitted to the Court and in her testimony in trial, and there's no inconsistencies between those two. Also, here, the government is speculating as to what a woman who was harmed would say, just like the Court did. And this Court held in Bandari that, quote, the subjective belief as to what an applicant should include in her asylum application has no place in the matters of credibility finding. This Court has also consistently ruled that speculation does not constitute substantial evidence. I'd like to point out again that the notice of intent to deny is not inherently reliable, and that here, the officer who was the author of the note was not even produced at the hearing, thus Petitioner's due process rights were somewhat violated. Moreover, in this case where Petitioner's credibility was questioned, she has provided corroborated evidence in the record. There is evidence showing her membership in the Ethiopian People's Revolutionary Party. There is evidence showing the death of her brother, the death certificate. There is also evidence showing that she was suffering from post-traumatic stress disorder. This is somebody who suffered severe past persecution in Ethiopia. She was raped twice. She was beaten. She was threatened. She still fears returning to Ethiopia, and the government has not changed. It is still the same government that Petitioner fled from, and it continues to persecute and torture political opponents. Thank you. Thank you very much. Thank both sides for a good argument. The case of the Red Faith v. Gonzalez is now submitted for decision. As I mentioned earlier, the Kwan case, Kwan v. Gonzalez, has been submitted on the briefs. The last case on the argument calendar this morning is Langehorst. Excuse me, United States v. Langehorst.
judges: T.G. Nelson, W. Fletcher, Bea